

ORDERED in the Southern District of Florida on October 29, 2013.

Tagged Opinion

Laurel M. Isicoff, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 13-13325-BKC-LMI |
| DARRELL SAIN AND EVELYN TELLEZ-SAIN, | Chapter 13 |
| Debtors. | |
| _____/ | |

**ORDER SUSTAINING IN PART
LIMITED OBJECTION TO DEBTOR'S MOTION TO VALUE**

This matter came before the Court on the Debtors' Motions to Value and Determine Secured Status of Lien on Real Property (ECF ##28, 30, 32) (collectively the "Motions to Value") and the Limited Objection to these motions filed by Bayshore Master Association, Inc., Isles at Bayshore Club LLC, and the Shores Community Association, Inc. (ECF #82). The Court has reviewed the Motions to Value, the Limited Objection, the briefs filed in support of the Motions to Value (ECF #112) and in support of the Limited Objection (ECF #113), considered argument of counsel and all relevant material. Based on the foregoing, the Court sustains the Limited Objection.

**Factual and Procedural Background**

The joint Debtors, Darrell Sain and Evelyn Tellez Sain (collectively the "Debtors") are the owners of a condominium located in Cutler Bay, Florida (the "Condo"). At the time the Debtors filed bankruptcy, the Condo was encumbered by a first and second mortgage and recorded claims of lien filed by Bayshore Master Association, Inc. ("Bayshore Master"), Isles at Bayshore Club LLC ("Bayshore Club"), and the Shores Community Association, Inc. ("Shores Community") (collectively the "Associations"). There is no dispute that the Condo is subject to the recorded declarations for each of the Associations.[1] Nor does there appear to be a dispute that each of the Associations, and their rights with respect to the Condo, are governed by Florida Chapter 720.[2],[3]

The Motions to Value each assert that there is no equity in the Condo that exceeds the collective amounts due to the holders of the first and second mortgages and, therefore, the liens of each of the Associations may be stripped off. The Associations do not dispute the Debtors' claim of the value of the Condo but argue that the liens of each of the Associations are superior to the liens of the first and second mortgages and therefore cannot be stripped. The Associations also assert that even if the Debtors can strip off the Associations' liens, nothing in the orders allowing such strip off can impact the Associations' rights to collect from a subsequent owner of the Condo any unpaid balance for assessments owed by the Debtors if and at such time as the

---

[1] Declaration for Isles at Bayshore, as amended, recorded May 14, 2008 in O.R. Book 26377, p. 2504, public records of Miami-Dade County, Florida ("Bayshore Master Declaration"); Amended and Restated Isles at Bayshore Club Plan, as amended, recorded September 10, 2008, in O.R. Book 26561, p. 4987, public Records of Miami-Dade County, Florida (the "Bayshore Club Declaration"); Declaration for the Shores Community, as amended, recorded May 14, 2008, in O.R. Book 26561, p. 4987, public records of Miami-Dade County, Florida (the "Shores Community Declaration" ) (collectively the "Declarations").

[2] Even if the rights of any one of the Associations are governed by Chapter 718 of the Florida Statutes rather than Chapter 720, it does not affect this Court's analysis, because the provisions of the two statutes governing this decision are almost identical. For ease of comparison, the Court will reference sections from both Chapter 718 and Chapter 720.

[3] Fla. Stat. §720.3085 was most recently amended effective July 1, 2013 but the statute sections that relate to liability of subsequent owners for unpaid assessments of the prior owner have been in place for many years.

Condo is sold by the Debtors, or from the first mortgagee, to the extent such amounts are collectible pursuant to Florida Statute sections 720.3085 or 718.116.

### Analysis

Living in a condominium or in an organized development subject of a homeowners' association, has its benefits and its burdens. The benefits of communal living—security, amenities, common areas, and the collective maintenance of amenities and common areas—have an attendant cost. These costs are assessed—monthly or quarterly or sometimes annually—by associations set up to administer the amenities, common areas, security, and maintenance. The associations are governed by statute, as well as documents (usually called declarations) that are recorded in the public records. Included in these statutes and declarations are the provisions that set forth the obligations of the homeowners regarding payment of these assessments as well as the rights of the association if these assessments are not paid.

    **a. Assessments and Liens in General**

Any owner of a parcel in a development is liable for all assessments that come due while the owner of the parcel.[4] If the declaration provides, that liability is secured by a lien on the parcel, which lien relates back to the date the original declaration was recorded.[5] However, the ability to foreclose on that lien requires compliance with certain procedural hurdles.[6] If stated in the declaration, the liens of an association may take priority over the liens of mortgage holders, but, with respect to first mortgages only, on and after such date as a claim of lien has been recorded.[7]

---

[4] *See* Fla. Stat. §§720.385(2)(a);.§718.116(1)(a).
[5] *See* Fla. Stat. §§720.385(1); §718.116(5)(a).
[6] *See generally* §720.385.
[7] *See* Fla. Stat. §§720.385(1); §718.116(5)(a).

3

### b. The Court Cannot Determine the Priority of the Associations' Liens

The Declarations are recorded.[8] Each Declaration provides that the unpaid assessments are secured by liens.[9] Notwithstanding, this Court has no information, through evidence or notice of filing, from which this Court can determine whether or when any claims of lien were recorded, or when the first or second mortgages were recorded. Consequently, even assuming that this Court would find that, under the terms of the statute[10] and the Declarations, the liens or any or all of the Associations has priority over the liens of either the first or second mortgage, it cannot do so without an evidentiary hearing. Thus, that portion of the Limited Objection that is based on the priority of any of the Associations' liens over those of either the first or second mortgage must be set by the parties for further evidentiary hearing.

### c. Any Lien Strip Off in this Case Will Have No Impact on Subsequent Purchasers or on a Mortgagee

In addition to being liable for all assessments that accrue during ownership of a parcel, "[a] parcel owner is joint and severally liable with the previous parcel owner for all unpaid assessments that came due up to the time of transfer of title."[11] Where the successor owner is the holder of a first mortgage, that liability is capped, subject to certain conditions outlined in the statute. This joint and several liability for assessments is also secured by a lien to the extent provided in the declaration.

The Debtors argue that the strip off of the Associations' liens will eliminate any liability for the assessments. That is not entirely accurate. The Debtors' liability for assessments is an *in*

---

[8] *See supra* note 1; ECF #113.
[9] Bayshore Master Declaration Section 18.14; Bayshore Club Declaration Section 9.1; Shores Community Declaration Section 16.14.
[10] Timing is also an important issue with respect to the application of certain provisions of Fla. Stat §720.3085, which several courts have held cannot be applied retroactively. *See Ecoventure WGV, Ltd. v. St. Johns NW Residential Ass'n*, 56 So. 3d 126 (Fla. 5th DCA 2011); *Coral Lakes Community Ass'n v. Busey Bank, N. A.*, 30 So. 3d 579 (Fla. 2d DCA 2010).
[11] Fla. Stat. §720.3085(2)(b). *See* Bayshore Master Declaration Section 18.15; Bayshore Club Declaration Section 9.3; Shores Community Declaration Section 16.15.

*personam* debt secured by liens on the Condo. If the Debtors are successful in stripping the Associations' liens, the Debtors' *in personam* debt survives as an unsecured debt, to be treated as set forth in the chapter 13 plan if a claim is filed, with any unpaid balance subject to discharge if the Debtors successfully complete their chapter 13 case.

Nonetheless, and at the heart of the dispute before the Court, no matter what the Debtors accomplish in their bankruptcy with respect to their liability for the assessments, nothing under applicable bankruptcy or non-bankruptcy law can impact a subsequent owner's *in personam* liability for the unpaid assessments. The Florida Statutes, as well as each of the Declarations, unequivocally provide that a subsequent purchaser is liable for unpaid assessments of the prior owner.[12] That independent statutory liability is secured by a lien on that subsequent owner's interest in the parcel or condominium at issue. As Judge Cristol noted in *In re Gonzalez*, No. 07-14968-AJC, 2010 WL 1571172, at *3 (Bankr. S.D. Fla. April 20, 2010), addressing an analogous situation, the elimination of the lien on a debtor's interest in property does not avoid the obligations for assessments for which the mortgagee may become responsible. "To do otherwise would unfairly provide the mortgagee, a non-debtor, the benefit of the Bankruptcy Code's avoidance powers."[13]

### Conclusion

The Bankruptcy Code provides a deserving debtor with a fresh start. But that fresh start is personal to the debtor. As the Bankruptcy Code so plainly states "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."[14] The Debtors' right to strip a lien off their Condo and discharge their debts cannot

---

[12] This liability may be capped for holders of first mortgages as set forth in Fla. Stat. §§720.3085 and 718.116(b).
[13] *See In re Plummer*, 484 B.R. 882 (Bankr. M.D. Fla. 2013).
[14] 11 U.S.C. §524(e). There is an exception for community debt that is not applicable to this case.

compromise the rights of creditors against third parties or the property of third parties, even if that property is, one day, the Condo.

Accordingly, the Objection is sustained in part and continued in part. The parties are directed to contact the Courtroom Deputy to schedule the evidentiary hearing.

# # #

Copies furnished to:

Michael Frank, Esq.
Paul Botros, Esq.